### 69368. AVERY v. THE STATE.
(329 SE2d 276)

POPE, Judge.

Lacey Avery, Jr. was convicted of burglary and sentenced to serve fifteen years. He now appeals enumerating three errors.

1. In his first two enumerations of error Avery contends he was denied due process of law under both the Federal and State Constitutions because the State was allowed to use its peremptory strikes to exclude blacks from the petit jury. This argument has been decided adversely to Avery in *Jordan v. State*, 235 Ga. 732 (1) (222 SE2d 23) (1975). We are not persuaded that the holding of *Taylor v. Louisiana*, 419 U. S. 522 (95 SC 692, 42 LE2d 690) (1975), alters the holding in *Jordan*. In *Jordan*, the Supreme Court followed the holding of *Swain v. Alabama*, 380 U. S. 202 (85 SC 824, 13 LE2d 759) (1965). The Supreme Court of Illinois in *People v. Williams*, 97 Ill.2d 252 (454 NE2d 220) (1983), was faced with a challenge identical to that presented here. Like Georgia, Illinois followed the rule in *Swain*. "We consider that the authority of *Swain* was not lessened because of the recognition of a sixth amendment fair-cross-section requirement in *Taylor v. Louisiana*, [supra]. The court in *Taylor* held that it is fundamental to the sixth amendment right to a jury trial that the selection of a petit jury be from a representative cross section of the community. The

issue, as the court put it, was, 'whether the presence of a fair cross section of the community on venires, panels, or lists from which petit juries are drawn is essential to the fulfillment of the Sixth Amendment's guarantee of an impartial jury trial in criminal prosecutions.' [Cit.]

"There was no retreat in the *Taylor* opinion from the view that it is an essential part of our system of trial by an impartial jury that both sides be allowed in particular cases to exercise peremptory challenges on any ground they select. It appears that the complaint addressed in *Taylor* is the systematic exclusion of a group from the jury system, not from any particular jury. This is in harmony with the suggestion in *Swain* that the systematic exclusion of blacks by peremptory challenges in case after case regardless of the particular circumstances involved would raise a constitutional issue. [Cit.] Moreover, the limited character of the *Taylor* holding is clear from the following statement, which appears at the conclusion of the opinion: 'It should also be emphasized that in holding that petit juries must be drawn from a source fairly representative of the community we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition (citation); but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof.' [Cit.]" *People v. Williams*, supra at 278-79 (454 NE2d, supra at 232). We find the analysis in *Williams* persuasive. The enumerations are without merit.

2. Nor do we find merit in Avery's contention that the trial court erred in allowing the State to introduce into evidence a photograph during cross-examination of Avery. The photograph was used to impeach Avery's claim that he suffered no cuts at the time of the burglary. Without question, the State could have waited until after questioning Avery and introduced the photograph into evidence on rebuttal. See *Walker v. Walker*, 14 Ga. 242 (5) (1853). However, the order of proof is within the discretion of the trial court and will not be disturbed absent abuse. *Brown v. State*, 140 Ga. App. 198 (1) (230 SE2d 349) (1976). We find no abuse.

*Judgment affirmed. Banke, C. J., concurs. Benham, J., concurs specially.*

BENHAM, Judge, concurring specially.

I concur in the majority opinion; however, I would approach the matter of peremptory strikes somewhat differently, and I concur in a separate opinion only to emphasize the need for preventive rather than corrective measures in this area.

The record shows that during voir dire the State's attorney used all ten of his peremptory strikes to remove blacks from the jury. The defendant, a black man, objected to such a use of the peremptory process as being violative of the Sixth and Fourteenth Amendments to the United States Constitution and the Constitution of the State of Georgia. In response to this objection, the trial court stated as follows: "I don't think it makes any difference what you [defense counsel] do on peremptory strikes or what he [state's attorney] does, I think you have a right to do it; that's what I rule . . ."

The use of peremptory strikes, especially as it relates to minorities, has been particularly worrisome to the appellate courts of this state, as evidenced by the numerous cases where the issue has been raised on appeal: *Watkins v. State*, 199 Ga. 81, 94 (33 SE2d 325) (1945); *Jordan v. State*, 235 Ga. 732 (1) (222 SE2d 23) (1975); *Crawford v. State*, 159 Ga. App. 278 (283 SE2d 300) (1981); *Tiller v. State*, 159 Ga. App. 557 (2) (284 SE2d 63) (1981); *Hatton v. Smith*, 228 Ga. 378 (2) (185 SE2d 388) (1971); *High v. State*, 247 Ga. 289 (276 SE2d 5) (1981), overruled on other grounds, *Wilson v. Zant*, 249 Ga. 373 (290 SE2d 442) (1982); *Taylor v. State*, 243 Ga. 222 (4) (253 SE2d 191) (1979); *Hobbs v. State*, 229 Ga. 556 (6) (192 SE2d 903) (1972); *Blackwell v. State*, 248 Ga. 138 (281 SE2d 599) (1981); *Jordan v. State*, 247 Ga. 328 (7) (276 SE2d 224) (1981).

Historically, minorities have turned to the courts for protection of their rights in many areas, and the courts have been sensitive to such pleas in the areas of education (*Brown v. Bd. of Education*, 347 U. S. 483 (74 SC 686, 98 LE 873) (1954)); employment (*Dept. of Human Resources v. Montgomery*, 248 Ga. 465 (284 SE2d 263) (1981)); voting (*United States v. Raines*, 362 U. S. 17 (80 SC 519, 4 LE2d 524) (1960); *Wall v. Bd. of Elections, Chatham County*, 242 Ga. 566 (250 SE2d 408) (1978)); and public accommodations (*United States v. Johnson*, 390 U. S. 563 (88 SC 1231, 20 LE2d 132) (1968)).

The leading case interpreting the proper use of peremptory challenges by the prosecution is *Swain v. Alabama*, 380 U. S. 202 (85 SC 824, 13 LE2d 759) (1965). In *Swain*, the U. S. Supreme Court held that a violation of equal protection would exist only when a particular group had been systematically excluded from jury service over a period of time. The majority opinion in the case in chief points out that Georgia has followed *Swain* and its progeny, and that many other states also require a showing of systematic exclusion, e.g., *People v. Williams*, 97 Ill.2d 252 (454 NE2d 220) (1983); *People v. McCray*, 57 NY2d 542 (443 NE2d 915) (1982).

The requirements of showing systematic and purposeful exclusion of a particular group is solidly anchored in the case law of Georgia. However, some other states have interpreted *Swain* more liberally in light of *Taylor v. Louisiana*, 419 U. S. 522 (95 SC 692, 42 LE2d

690) (1975), which applied the Sixth Amendment to the states and, in doing so, they have not always required a showing of systematic exclusion. In *Commonwealth v. Soares*, 377 Mass. 461 (387 NE2d 499) (1979), cert. denied 444 U. S. 881 (100 SC 170, 62 LE2d 110) (1979); and *People v. Wheeler*, 22 Cal.3d 258 (583 P2d 748, 148 Cal. Rptr. 890) (1978), the courts found an abuse of the peremptory process without a showing of systematic exclusion.

At first blush, without considering *Soares* and *Wheeler*, it would appear that the use of peremptory strikes is a fundamental right and therefore inviolate. However, the court has already placed some limitations on the use of the process in *Stilson v. United States*, 250 U. S. 583 (40 SC 28, 63 LE 1154) (1919); and *Pointer v. United States*, 151 U. S. 396 (14 SC 410, 38 LE 208) (1894).

The real evil my concurrence addresses is the subtle but awesome message of discrimination that the targeted striking of certain groups by the State might convey to the jurors who are chosen to try the case, and the bitter taste it might leave in the mouths of the group targeted by the strikes.

In cases too numerous to mention, the courts have moved decisively against procedures that attach a badge of inferiority to certain groups. This protection is needed even more critically in the courtroom setting, which is designed to assure equal justice to all. It can be easily seen that such a procedure as complained of by appellant could undermine the jury system and pervert the trial process to such a degree that minorities would lose respect for the judicial system, be less than enthusiastic about jury service, and be uncooperative as witnesses, all of which could breed a host of other evils and be detrimental to the legal system.

What I suggest today is the use of a preventive measure prior to the voir dire that would have as its goal the nullification of any message, subtle or otherwise, that could be sent to the jury by the state's attorney peremptorily striking any particular group. While *Swain*, *Taylor*, and *Jordan*, supra, do say that the peremptory strikes can be exercised without cause, without explanation, and without judicial scrutiny, they do not say that they must be exercised without guidance and direction.

*Stilson*, supra, has already taught us that the peremptory strike is not a fundamental right. Other cases have shown that the State's attorney does not have unbridled authority in the courtroom, such as in *United States v. Haynes*, 466 F2d 1260 (5th Cir. 1972), where the government's attorney conducted himself in a reprehensible manner before the jury. He was brought before the court in the presence of the jury and rebuked by the court. Therefore, it seems only logical to authorize the trial court, upon request, to charge the attorneys before voir dire and in the presence of the prospective jurors as to their du-

ties as attorneys and officers of the court. Such a charge would help to create an atmosphere of fairness and place the court in a position of impartiality rather than what might appear to be acquiescence in the peremptory process.

The following charge is suggested: "I charge you that no person who is otherwise qualified to serve on a jury should be purposefully excluded from service merely because of his or her membership in a particular group or class. While the court will not interfere in the exercise of your peremptory strikes, to allow unfounded prejudices to enter the decision-making process is at war with basic concepts of a democratic society and a representative government, and such conduct is not approved by the court." *Swain v. Alabama*, supra, 380 U. S. at 204; *Smith v. Texas*, 311 U. S. 128, 130 (61 SC 164, 85 LE 84, 86) (1940); cf. also *Norris v. Alabama*, 294 U. S. 587 (55 SC 579, 79 LE 1074) (1935). The giving of such a charge or a charge in similar language would hasten the day when, as is mentioned in the *Swain* dissent at 785, the promise of justice will not be kept to our ear and broken to our hope.

Since no request was made for such a charge and no showing of systematic or purposeful exclusion was made, appellant's enumeration of error is without merit.

In accordance with the foregoing, I would concur.

DECIDED MARCH 8, 1985 —
REHEARING DENIED MARCH 22, 1985 — 

*John H. Ruffin, Jr.*, for appellant.
*Sam B. Sibley, District Attorney*, for appellee.