A05A0588. ALLEN v. THE STATE.
(614 SE2d 857)

MIKELL, Judge.

House of Prayer church pastor Arthur Allen, who, along with four co-defendants, represented themselves at a jury trial in Fulton

---

[14] Supra.

[15] 262 Ga. App. 237 (585 SE2d 184) (2003).

[16] *In the Interest of B. I. F.*, supra at 780 (1); *In the Interest of J. A. R. S.*, supra at 240 (2).

[17] Id.

[18] *In the Interest of D. S.*, 247 Ga. App. 569, 573 (545 SE2d 1) (2001); *In the Interest of G. K. J.*, 187 Ga. App. 443, 444 (2) (370 SE2d 490) (1988).

County Superior Court, was convicted of two counts of cruelty to children and two counts of aggravated assault for his role in orchestrating the unlawful beatings of two children. He was sentenced to ten years, ninety days in jail and the remainder on probation. Following his conviction, Allen obtained counsel, who filed a motion for new trial. The motion was denied, and this appeal followed. In his enumerations of error, Allen contends that he did not knowingly waive his right to counsel; that a host of general procedural errors infected the trial; and that OCGA § 16-5-70, the statute proscribing cruelty to children, is unconstitutionally vague. We reject Allen's arguments and affirm his convictions.

1. In his first enumerated error, Allen contends that the court erred in finding that he knowingly waived his right to counsel. Allen claims that the court failed to outline on the record the dangers of self-representation. This claim is belied by the transcript of a motion hearing at which the judge "went to extraordinary lengths to ensure that [Allen] made a knowing and intelligent waiver."[1]

"The determination of whether a defendant has intelligently waived his constitutional right to counsel depends upon the particular facts and circumstances surrounding each case."[2] Although no "magic words" are required to effect a valid waiver,[3] the trial court should advise the defendant of "(1) the nature of the charges against him, (2) any statutory lesser included offenses, (3) the range of possible punishments for the charges, (4) possible defenses, (5) mitigating circumstances, and (6) any other facts necessary for a broad understanding of the matter."[4]

The record in the case at bar reflects that the court initially appointed standby counsel for Allen and his co-defendants. The court emphasized that proceeding pro se was very dangerous and "a very risky venture." The court explained the nature of the charges in detail as well as the range of possible sentences. Specifically, the court informed Allen that if he were convicted on all counts, he would be "looking at 80 years." Additionally, the court informed Allen of the lesser included offenses of aggravated assault; outlined a litany of possible defenses and mitigating factors; and warned him, in excruciating detail, of the dangers of self-representation. The court warned Allen that without counsel, he would not likely understand the proper method of asserting legal defenses, selecting a jury, cross-examining the state's witnesses, moving for a mistrial, making an opening

---

[1] *Bush v. State*, 268 Ga. App. 200, 202 (2) (601 SE2d 511) (2004).

[2] (Citation omitted.) *Smiley v. State*, 252 Ga. App. 235, 236 (2) (555 SE2d 887) (2001).

[3] *Reviere v. State*, 231 Ga. App. 329, 330 (1) (498 SE2d 332) (1998).

[4] *Humphries v. State*, 255 Ga. App. 349, 351 (1) (565 SE2d 558) (2002).

statement and closing arguments, or deciding whether to testify in his own behalf. The court further warned Allen that he might inadvertently place his character in issue and that he might not understand the legal significance of jury charges. The portion of the transcript in which the court explains the pitfalls of self-representation exceeds five pages.

Moreover, following this explanation, the court examined Allen, verifying that he had the means to hire an attorney. Allen stated that he had elected not to hire an attorney. Further, he rejected the assistance of, and refused to cooperate with, standby counsel. Standby counsel was present and informed the court that Allen wished to represent himself. After making this inquiry, the court ruled that Allen had knowingly, voluntarily, and intelligently waived his right to counsel and could proceed pro se without the assistance of standby counsel.

Next, at the beginning of trial, the court reaffirmed, by inquiring of Allen, that he had unequivocally asserted his right to self-representation, had rejected the assistance of standby counsel, had been advised of the dangers of proceeding without counsel, and had been informed of the nature of the charges, the range of allowable punishment, possible defenses, and all other facts essential to a broad understanding of the case. Again, Allen waived his right to counsel and specifically stated that he did not want an attorney.

Unable to force counsel upon Allen, which would have violated his constitutional right to represent himself,[5] the court did everything within its power to assure that Allen had knowingly, voluntarily, and intelligently waived his right to counsel.

> [A] defendant still retains the right to waive representation by counsel. He may not, however, play one right against another with the hope of creating error. . . . [A] defendant who has knowingly waived counsel [may not] then complain of a lack of counsel when he determines that the judge's warnings were valid. Under such circumstances, the defendant's problems are of his own making, and he is bound by his poor choices.[6]

"We hold that the trial court's extraordinary and strenuous efforts here more than sufficed to adequately inform [Allen] of the dangers

---

[5] See *Faretta v. California*, 422 U. S. 806, 817 (II) (95 SC 2525, 45 LE2d 562) (1975) ("forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so"; appointment of public defender violated defendant's Sixth Amendment right to conduct his own defense). Accord *Clarke v. Zant*, 247 Ga. 194, 196 (275 SE2d 49) (1981).

[6] (Citation omitted.) *McDowell v. State*, 239 Ga. App. 667, 668-669 (1) (522 SE2d 44) (1999).

of proceeding pro se."[7] Having made that choice after extensive and repeated warnings, Allen is now bound by it. It follows that this enumeration of error is without merit.

2. In his second enumerated error, Allen complains that the trial court committed "general procedural errors." Yet he failed to raise these errors in the trial court. "[T]his is a court for correction of errors of law committed by the trial court where proper exception is taken, because one may not abandon an issue in the trial court and on appeal raise questions or issues neither raised nor ruled on by the trial court."[8] Accordingly, as explained in detail below, he has waived each alleged error.

(a) Allen first alleges that the indictment was flawed because it contained eleven defendants and fourteen counts, although only five defendants were being tried. Construing this assertion as a challenge to the form of the indictment, we hold that it has been waived. The transcript shows that prior to reading the indictment to the jury, the court struck through the names of the defendants whose trial had been severed and decided to inform the jury that there were other individuals named in the indictment who were not being tried at that time. The court asked Allen whether that procedure would be acceptable, and Allen replied, "that's fine." "The accused waives all exceptions to the mere form of the indictment by failing to urge them in a timely written demurrer or motion to quash."[9] Having failed to file either a demurrer or motion to quash, Allen has waived any objection to the form of the indictment.[10]

(b) Allen next asserts that the trial court erred in failing to sever his trial from that of his co-defendants. He claims that he was harmed by adverse spillover evidence introduced against his co-defendants. However, Allen made no motion for severance, and consequently has waived any right to raise any objection on appeal.[11] "A ruling must be obtained for this court to review an alleged error."[12]

(c) Third, Allen contends that he raised challenges to the jury array, which the trial court failed to consider, violating OCGA § 15-12-162. That Code section provides:

---

[7] *Bush,* supra at 205 (2).

[8] (Citation and punctuation omitted.) *Colley v. State,* 225 Ga. App. 198, 201 (3) (483 SE2d 355) (1997).

[9] (Footnote omitted.) *Barnett v. State,* 259 Ga. App. 465 (1) (576 SE2d 923) (2003).

[10] See, e.g., *Hogan v. State,* 261 Ga. App. 261, 262 (2) (582 SE2d 210) (2003) (special demurrer raises objections to form of the indictment, and failure to file such a demurrer waives any challenge to form).

[11] See, e.g., *Jones v. State,* 258 Ga. 249, 250 (3) (368 SE2d 313) (1988) (defendant who failed to object to severance at trial waived any objection on appeal).

[12] (Punctuation and footnote omitted.) *Mason v. State,* 262 Ga. App. 383, 384 (2) (585 SE2d 673) (2003) (severance argument raised for the first time on appeal is waived).

The accused may, in writing, challenge the array for any cause going to show that it was not fairly or properly impaneled or ought not to be put upon him. The court shall determine the sufficiency of the challenge at once. If sustained, a new panel shall be ordered; if not sustained, the selection of jurors shall proceed.

Allen asserts that he orally challenged the array when the court inquired whether he had any questions for the panel as a whole, and Allen replied: "I don't have any questions to ask of the panel because we don't feel like we're getting a fair and an impartial trial." The court declined to entertain any explanation at that juncture and proceeded with individual voir dire. Thereafter, Allen refused to participate in voir dire. After each panel member was questioned by the state, the court asked Allen whether he had any questions, and in each instance, Allen replied that he had none. Furthermore, Allen refused to participate in the striking process. The court indicated that failure to strike a juror would be construed as an acceptance of the juror, and Allen acquiesced in that procedure. The record reflects that the defendants were presented with the strike sheet, showing all of the jurors, that the defendants refused to accept or select them, and that, at the court's direction, the clerk entered acceptance of those jurors that the state had accepted. When the jury was seated, the court inquired: "Defendant Allen, is this the jury that has been selected by you?" Allen responded, "whichever way. Either way it's satisfactory with me."

"[W]hen a panel of jurors is put upon the [accused], he should challenge the array for any cause which would go to show that it was not fairly and properly put upon him, and . . . if he fails to do so, the objection is waived."[13] "[A] jury is 'put upon' a defendant at the time that the jury array is seated and voir dire commences."[14] "A challenge to the array of the petit jury which is not raised until after the trial . . . is not timely."[15] At no time during the entirety of voir dire or the remainder of the trial did Allen, in writing, challenge the array for any cause going to show that it was not fairly or properly impaneled. Therefore, he has waived any right to challenge the composition of the jury on appeal.

In arguing that his purported oral challenge has not been waived, Allen relies on *Anthony v. State*,[16] in which we held that "a challenge

---

[13] (Citation omitted.) *Williams v. State*, 210 Ga. 665, 667 (1) (82 SE2d 217) (1954).

[14] *Guest v. State*, 186 Ga. App. 318 (1) (367 SE2d 105) (1988).

[15] (Citations omitted.) *Clark v. State*, 255 Ga. 370, 373 (2) (338 SE2d 269) (1986).

[16] 213 Ga. App. 303 (444 SE2d 393) (1994).

to the array is not waived as long as it is raised at the earliest opportunity to do so, and that if the defendant has no fair opportunity to put his challenge in writing at that time, he may do so for the first time in a motion for new trial."[17] In *Anthony,* however, the defendant did not become aware of the basis for her challenge, overrepresentation of persons under the age of 25, until after voir dire. She asserted the challenge orally before the jury was picked and then included it in her motion for a new trial. Under those circumstances, we held that the oral challenge was not waived, although we ultimately concluded that the trial court did not err in rejecting her challenge.[18] The circumstances in the case at bar are wholly different. Allen refused to participate in voir dire or jury selection and has not set forth any facts, either in his amended motion for new trial or his appellate brief, showing that his jury was not properly composed. Under these facts, we hold that Allen's purported challenge has been waived.

(d) Allen next contends that the trial court erred in giving a "stir them up" jury charge that was not a proper *Allen* charge. This assertion of error is not supported by argument or citation to authority and consequently is deemed abandoned.[19]

3. Finally, Allen maintains that OCGA § 16-5-70, the statute proscribing cruelty to children, is unconstitutionally vague. The transcript reveals, however, that Allen failed to raise any constitutional challenge during trial. Accordingly, it is waived. "All challenges to the constitutionality of a statute must be raised at the first available opportunity, and it is too late to raise such questions after a guilty verdict has been returned by the jury."[20]

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED MAY 10, 2005 — 

*Deborah J. Poole,* for appellant.
*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Bettieanne C. Hart, Assistant District Attorneys,* for appellee.

---

[17] (Citations omitted.) Id. at 304 (1).
[18] Id. at 305-306 (1), (2).
[19] See Court of Appeals Rule 25 (c) (2).
[20] (Punctuation omitted.) *Lewis v. State,* 279 Ga. 69, 70 (2) (608 SE2d 602) (2005), citing *Kolokouris v. State,* 271 Ga. 597, 598 (1) (523 SE2d 311) (1999).